**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
**PHILADELPHIA**

| | |
|---|---|
| **CARL EVANS, DONALD SPENCER,** **VALERIE SPENCER, CINDY CARTER,** **individuals, on Behalf of themselves and for** **the Benefit of all with the Common or** **General Interests, Any Persons Injured, and** **All Others Similarly Situated,** | CIVIL DIVISION <br><br> No. 10-cv-1679 |
| **Plaintiffs,** | |
| **v.** | |
| **LINDEN RESEARCH, INC., a corporation,** **and PHILIP ROSEDALE, an individual,** | |
| **Defendants.** | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' SUPPLEMENT BRIEF IN OPPOSITION OF DEFENDANTS**
**LINDEN RESEARCH, INC., AND PHILIP ROSEDALE'S MOTION TO DISMISS**
**UNDER RULE 12(b)(6) OR IN THE ALTERNATIVE TO TRANSFER**
**PURSUANT TO 28 U.S.C. § 1404(a)**

AND NOW COME, the Plaintiffs, by and through their attorneys, Jason A.

Archinaco, Esquire, Robert A. Bracken, Esquire and the law firm of Pribanic Pribanic +

Archinaco LLC, and files the following Supplement Brief in Opposition of Defendants

Linden Research Inc., and Philip Rosedale's Motion to Dismiss Under Rule (12)(b)(6).

**I.      INTRODUCTION**

As set forth in detail in Plaintiffs' Brief in Opposition of Defendants' Motion to

Dismiss, it is Plaintiffs' position that not only is the forum selection clause at issue

unreasonable, but also Linden's Terms of Service ("TOS") as a whole.  Indeed, it is

Plaintiffs' position that all versions of Linden's TOS are unreasonable, procedurally

unconscionable and substantively unconscionable.   Although Defendants have urged this Court to view the venue selection clause in isolation, such is not a proper analysis.

Furthermore, Plaintiffs have submitted Declarations in support of this brief in opposition.  The Declarations demonstrate that the virtual property, virtual items and United States currency that were wrongfully confiscated by Linden, were taken in accounts which had only been logged into while the original TOS (the one this Court deemed unconscionable) were in place; therefore, those accounts cannot possibly be subject to any other TOS.

## II.      ARGUMENT

## A.      THE NEW VENUE CLAUSE DOES NOT APPLY.

Simply put, the new venue clause does not apply in this case.  The virtual land, items and U.S. currency stolen from Plaintiffs by Defendants occurred in accounts that were registered under the first Terms of Service ("TOS") that contained the arbitration clause deemed unconscionable by this Court in *Bragg v. Linden*.  Defendant Linden never transferred the items or land contained in such accounts to any other future account opened by any of the Plaintiffs.  Instead, those virtual items, land and U.S. currency remained locked away in accounts that Defendants unilaterally terminated.  The following are the accounts that Plaintiffs believe contain the virtual items, land and U.S. currency at issue in this case for each of the named Plaintiffs.[1]

---

[1] Linden has not identified the accounts that contained the virtual items, land and U.S. currency confiscated by Linden.

| Plaintiff | Accounts Believed to have Items or Land | Account Created Under Which TOS? |
|---|---|---|
| Evans | Accounts 1 through 72 (all created prior to 9/18/2007)[2] | TOS #1 (prior to 9/18/2007) |
| D. Spencer | Account 1 (created prior to 9/18/2007) | TOS #1 (prior to 9/18/2007) |
| V. Spencer | Account 1 (created prior to 9/18/2007) | TOS #1 (prior to 9/18/2007) |
| C. Carter | Account 4 (created prior to 9/18/2007) | TOS #1 (prior to 9/18/2007) |

Defendants' argument about the creation of future accounts is simply a red herring designed to confuse this Court. The first TOS (pre-9/18/2007), the second TOS (9/18/2007-3/24/2008), the third TOS (3/24/2008-4/30/2008) each claim: "This Agreement sets forth the entire understanding and agreement between you and Linden ***with respect to the subject matter hereof***." (emphasis added) (See, Exhibit 1 (first TOS), ¶ 13, Exhibit 2 (second TOS), ¶ "General Provisions", Exhibit 3 (third TOS), ¶ "General Provisions"). It makes absolutely no sense that the accounts that contained the virtual items, land and U.S. Currency that Linden unilaterally locked Plaintiffs out of could possibly be subjected to a new agreement. Indeed, had Linden sought to apply a newer agreement to the old accounts holding the virtual items, land and U.S. currency taken from Plaintiffs, why didn't Linden simply transfer such items, land and money to any new account opened by any of the Plaintiffs? The fact that Linden did not do so is telling.

Further, it is only in the fourth TOS (4/30/2010-present) that Defendant Linden attempted to unilaterally alter ***the entire*** prior relationship between the parties by inserting the language: "This Agreement . . . sets forth the entire understanding and

---

[2] Evans accounts 62 and 63 were logged into after the second TOS effective date, i.e., post 9/18/2007. Evans' access to such accounts was terminated in March, 2008 before the effective date of the third TOS.

agreement between you and Linden Lab with respect to the subject matter hereof[3] ***and***

***supersedes any prior or contemporaneous agreements or understandings***." (emphasis

added).  See, Exhibit 4, ¶ 13.3.  None of the prior TOS claimed that they were

superseding any prior agreements or understandings.  Indeed, it is only in April, 2010 –

several years after the virtual items and land were wrongfully confiscated that Defendant

Linden claims to have completely altered the relationship between the parties.  Such

would be akin to a consumer shopping at Sam's Club in 2006 and 2007, returning to the

store in 2010 only to have Sam's Club claim that it now had a new agreement that not

only applied to all future transactions, but retroactively reached back to transactions that

had occurred in 2006 and 2007.

Further, as demonstrated herein, Defendant Linden's unilateral attempts to

completely modify and alter the relationship between the parties is simply further

evidence of both the procedural and substantive unconscionability of the TOS.

**B.      DEFENDANT LINDEN'S TERMS OF SERVICE ARE
         UNCONSCIONABLE AND THIS COURT SHOULD, AS IT PREVIOUSLY
         DID IN *BRAGG*, LOOK AT THE ENTIRE TOS WHEN ANALYZING THE
         VENUE CLAUSE, NOT MYOPICALLY FOCUSING ONLY ON THE
         VENUE CLAUSE AS LINDEN SUGGESTS.**

As demonstrated in Plaintiffs' Brief in Opposition filed on July 30, 2010, Linden's

TOS are unconscionable and unreasonable.  Although Linden has attempted to paint this

as the same case as *Tricome v. Ebay, Inc.*, 2009 U.S. Dist. LEXIS 97045 (E.D.Pa. 2009),

and *Feldman v. Google, Inc.*, 513 F.Supp.2d 229 (E.D.Pa. 2007), it is simply not.  In each

of those cases (brought by sophisticated businessmen unlike the unsophisticated

consumers here), the Court was simply presented with a challenge to the venue clause –

---

[3] As is set forth herein, the subject matter of the TOS has been unilaterally changed by Linden over time.

standing alone.[4]  There is no evidence in either *Tricome* or *Feldman* that the Court was

presented, as it is here, with a broader challenge to the TOS itself or that either eBay or

Google inserted numerous unconscionable provisions in their TOS.[5]  Those cases are

distinct from others, such as *Comb v. Paypal, Inc.,* 218 F.Supp.2d 1165 (N.D.Cal. 2002)

and *Bragg v. Linden Research, Inc.*, 487 F. Supp. 2d 593, 608 (E.D. Pa. 2007) where the

courts correctly considered the entire TOS before opining on unconscionability.

Moreover, as is provided herein, Linden did not simply amend its first TOS to "add" a

venue clause.  Rather in the second TOS, in addition to a new venue clause, Linden

added other terms that benefitted Linden, and purported to begin stripping away

consumers' rights – culminating in the 2010 TOS that unequivocally claims to remove

consumers' ownership rights to their virtual land.

In addition to the mandatory arbitration provision, the original TOS (which was

addressed by this Court in *Bragg*) included other oppressive terms that supported the

unconscionability finding.  Indeed, this Court noted many of those terms that supported a

finding of substantive unconscionability:

> Here, the TOS contain many of the same elements that
> made the PayPal user agreement substantively
> unconscionable for lack of mutuality.  The TOS proclaim
> that "Linden has the right at any time for any reason or no
> reason to suspend or terminate your Account, terminate this
> Agreement, and/or refuse any and all current or future use
> of the Service without notice or liability to you." TOS P.
> 7.1.  Whether or not a customer has breached the

---

[4] In *Tricome*, a sophisticated businessman sued Ebay.  Ebay, unlike Linden, simply provides a forum for buyers and sellers to engage in auctions.  When someone is terminated from Ebay, there is no forfeiture of virtual items, property or U.S. currency.  Similarly, in *Feldman*, an attorney sued Google pertaining to its advertising program.  Again, like in *Tricome*, any termination of the agreement did not result in forfeiture of virtual items, property or U.S. Currency.   In other words, in *Tricome* and *Feldman*, when terminated, the plaintiffs were not confronted with unilateral forfeiture of their property.

[5] Presumably, had numerous unconscionable terms existed (like here), the plaintiffs in *Tricome* and *Feldman* would have requested that the Court employ a similar analysis to that used in *Comb* and *Bragg*.

> Agreement is "determined in Linden's sole discretion." *Id.*
> Linden also reserves the right to return no money at all
> based on mere "suspicions of fraud" or other violations of
> law. *Id.* Finally, the TOS state that "Linden may amend
> this Agreement . . . at any time in its sole discretion by
> posting the amended Agreement [on its website]." TOS P.
> 1.2.

*Bragg v. Linden Research, Inc.*, 487 F. Supp. 2d 593, 608 (E.D. Pa. 2007).

In light of the Court's analysis in *Bragg*, the following terms — in addition to the forum selection clause — still support a finding of substantive unconscionability as they were not removed post-*Bragg* from the TOS:

(1)     "Linden Lab may amend this Agreement at any time in its sole discretion . . . ." (*see* Paragraph under heading "Terms of Service");

(2)     "Linden Lab has the right at any time for any reason or no reason to suspend or terminate your Account, terminate this Agreement, and/or refuse any and all current or future use of the Service without notice or liability to you.  In the event that Linden Lab suspends or terminates your Account or this Agreement, you understand and agree that you shall receive no refund or exchange for any unused time on a subscription, any license or subscription fees, any content or data associate with your Account, or for anything else." (P. 2.6); and

(3)     Linden's right to alter, delete, move or transfer any content, currency or other items accumulated by a user in its sole discretion and for any reason or even no reason at all. (P. 5.3).

*See* Exhibits E and F of the Roundtree Declaration attached to Defendants' Motion to Dismiss filed on July 9, 2010.

Further, the modified 3/2010 TOS, still contains similar terms — in addition to the forum selection clause — that support a finding of substantive unconscionability:

(1)     "This Agreement may be changed by Linden Lab effective immediately by notifying you as provided in Section 13.4 below, provided that Material Changes will become effective thirty (30) days after such notification.  By continuing to access or use Second Life after the effect date of any such change, you agree to be bound by the modified Terms of Service." (P. 1);

(2)     Linden can still terminate or suspend accounts on the basis of a "general
        suspicion" (P. 11.5);

(3)     upon Linden's decision to terminate a user's account, the user will lose all
        content, data and property the user had owned in Second Life (P. 11.6);
        and

(4)     upon termination or suspension of a user's account, the user is not entitled
        to reimbursement for any "Linden dollar balance" held in the user's
        account, but may receive a refund of any credit balance held in their
        Second Life account; nevertheless, Linden maintains the right to impose
        "reasonable" restrictions (P. 11.3).

*See* Exhibit B of the Roundtree Declaration attached to Defendants' Motion to Dismiss

filed on July 9, 2010.

As mentioned above, not only did Linden keep unconscionable terms in the newer

TOS, but it added terms that made the TOS changes even more unconscionable.  This

Court's ruling in *Bragg* was filed on May 31, 2007.  *See Bragg*, 487 F. Supp. 2d at 593.

Defendants modified their Terms of Service on September 18, 2007 ("modified 9/18/07

TOS"), in March 2008 ("modified 3/2008") and finally in March 2010 ("modified

3/2010").   Those amendments did not remove clauses that supported this Court's

unconscionability finding.  Thus, although Linden would have this Court believe that all

it did was "insert" a new venue clause in substitution for the old clause deemed

unconscionable, that is not what really what happened.

For example, when the original TOS was "replaced" by Linden, Linden slipped

the following language into the September 18, 2007 TOS that had not been present

before:

> **Your intellectual property rights do not confer any rights of access to the
> Service or any rights to data stored by or on behalf of Linden Lab.**

See, Exhibit 2, ¶ 3.3.  (emphasis added).  That clause is a major change to the original

TOS and it is self-evident that the change benefitted only Linden to the detriment of

consumers.[6]  Thus, while consumers presumably had the right to access their virtual

items, land and U.S. currency under the first TOS, the second purports to strip that right

away.[7]  Other terms that unilaterally benefitted Linden were also inserted, including

changes to the definition of currency.[8]  In essence, when Linden claims that Plaintiff

Evans accepted a new venue clause, it equally claims that he agreed to strip himself of his

access rights.

Even worse than the change purporting to strip consumers of access rights were

the new terms unilaterally inserted into the March 31, 2010 TOS.  The 2010 TOS is a

blatant example of fraudulent bravado.  Therein, Linden actually purports to strip

consumers of their ownership rights to their virtual land.  Thus, as this Court noted in its

*Bragg* opinion, Linden advertised for years to distinguish itself from peers that a

consumer would own virtual items and land purchased in Second Life.  After inducing

millions of people register with Linden and purchase virtual items and land under those

representations, in 2010 Linden decided it was time to simply change them for Linden's

---

[6] The terms were also "submerged" and not visible on the screen.  See, Supplemental Brief in Support of Defendants Motion to Dismiss, Exhibit C (screenshot of terms).  Submerged terms have been considered by Courts in determining whether to enforce them.  See, *Feldman*, 513 F.Supp.2d at 236-7 (analyzing *Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 22 (2d Cir. 2002)).

[7] For example, Plaintiff Evans' accounts 62 and 63 were created under the original TOS.  Plaintiff Evans had virtual items and U.S. currency those accounts taken from him when he was locked out of those accounts in February / March, 2008.  Linden claims that Evans, by virtue of "clicking through" the second TOS (published September 18, 2007), was stripped of his right to access his virtual items and also his own money.  Thus, what Linden is claiming is that it successfully thwarted Evans' purpose of owning virtual items for his use and benefit by unilaterally deeming that he had no right to access them in a modified TOS. Thus, not only did Linden violate Evans rights by unilaterally taking his property, but Linden has sought through the TOS to substantiate their wrongful acts.  Further, if Evans (as here) wants to obtain declaratory or injunctive relief giving him access back to his items and money, Linden claims that he must do so in San Francisco.  According to the new arbitration and venue clause, such claims cannot be brought in a simple arbitration.

[8] Linden changed the definitions of currency in sections 1.4 and 1.5.  Again, the changes appear to unilaterally benefit Linden to the detriment of consumers.

8

unilateral benefit.  Not just for new customers, but for those that had registered and

purchased virtual items and land under prior representations.  Indeed, Linden placed the

following language into the 2010 TOS:

> 6. "VIRTUAL LAND" IS IN-WORLD SPACE THAT WE LICENSE
>
> Virtual Land is the graphical representation of three-dimensional virtual world
> space. When you acquire Virtual Land, you obtain a limited license to access and
> use certain features of the Service associated with Virtual Land stored on our
> Servers. Virtual Land is available for Purchase or distribution at Linden Lab's
> discretion, and is not redeemable for monetary value from Linden Lab.
>
> The Service includes a component of In-World virtual space that is stored on our
> Servers and made available in the form of virtual units ("Virtual Land"). This
> "Virtual Land" constitutes a limited license to access and use certain features of
> our Service as set forth below. Linden Lab may or may not charge fees for the
> right to acquire, transfer or access Virtual Land, and these fees may change at any
> time.
>
> When you acquire Virtual Land, Linden Lab hereby grants you a limited license
> ("Virtual Land License") to access and use features of the Service associated with
> the virtual unit(s) of space corresponding to the identifiers of the Virtual Land
> within the Service as designated by Linden Lab, in accordance with these Terms
> of Service and any other applicable policies, including the Second Life Mainland
> Policies as they exist from time to time. The Virtual Land License is transferable
> by the holder to any other user provided that both users and the proposed transfer
> comply with these Terms of Service, maintain their accounts in good standing,
> and are not delinquent on any Account payment requirements. Except as
> expressly permitted by this Agreement, this Virtual Land License may not
> otherwise be encumbered, conveyed or made subject to any right of survivorship
> or other disposition and any attempted disposition in violation of these Terms of
> Service is null and void. Linden Lab may revoke the Virtual Land License at any
> time without notice, refund or compensation in the event that: (i) Linden Lab
> determines that fraud, illegal conduct or any other violations of these Terms of
> Service or other Second Life policies is associated with the holder's Account or
> Virtual Land; or (ii) the holder becomes delinquent on any of that user's Account's
> payment requirements, ceases to maintain an active Account or terminates this
> Agreement.
>
> You may permit or deny other users to access your Virtual Land on terms
> determined by you. Any agreement you make with other users relating to use or
> access to your Virtual Land must be consistent with these Terms of Service, and
> no such agreement can abrogate, nullify, void or modify these Terms of Service.

You acknowledge that Virtual Land is a limited license right and is not a real property right or actual real estate, and it is not redeemable for any sum of money from Linden Lab. You acknowledge that the use of the words "Buy," "Sell" and similar terms carry the same meaning of referring to the transfer of the Virtual Land License as they do with respect to the Linden Dollar License. You agree that Linden Lab has the right to manage, regulate, control, modify and/or eliminate such Virtual Land as it sees fit and that Linden Lab shall have no liability to you based on its exercise of such right. Linden Lab makes no guarantee as to the nature of the features of the Service that will be accessible through the use of Virtual Land, or the availability or supply of Virtual Land.

Exhibit 4, ¶ 6.

Compounding that language for consumers that purchased virtual land prior to

April, 2010 is the following clause:

This Agreement may be changed by Linden Lab effective immediately by notifying you as provided in Section 13.4 below, provided that Material Changes will become effective thirty (30) days after such notification.  By continuing to access or use Second Life after the effective date of any such change, you agree to be bound by the modified Terms of Service.  A "Material Change" is a change to this Agreement that reduces your contractual rights or increases your responsibilities under this Agreement in a significant manner.

Id. at ¶ 1.  When read with the purported "integration" clause contained in Section 13.3,

Linden's claim is that is has unilaterally stripped thousands of buyers of virtual land of

their ownership rights, replacing them with a "limited license" with no right to even

access the land if Linden unilaterally terminates the land buyer.

Thus, when reading the TOS as a whole and not simply focusing on the venue

clause as Linden myopically suggests, the above supports a finding of substantive

unconsionability.  The modified versions of the TOS were not only required to be agreed

to by Second Life participants creating new accounts, but also those that had already been

playing and agreed to the original TOS.  *See* Roundtree Declaration at ¶ 6, which is

attached to Defendants' Motion to Dismiss filed on July 9, 2010.  Defendants offered

participants no consideration for agreeing to those modified terms.

Defendants focus upon the allegation that the named Plaintiffs have agreed to the modified 3/2010 TOS is simply designed to serve as a distraction. It also, however, highlights the absurdity of Linden's position. Defendants have not cited any case law standing for the proposition that agreeing to terms of service on a separate account modifies or changes the terms of a prior closed account. And, it must be noted that Defendants have not brought to the Court's attention, those accounts that contained the virtual property, virtual items and U.S. currency wrongfully confiscated by Defendants.

The named Plaintiffs did not agree to the modified 3/2010 TOS on the accounts in which Defendants wrongfully confiscated their virtual property, virtual items and United States currency. *See* Declarations of Carl Evans, Donald Spencer, and Valerie Spencer attached hereto as Exhibits 5, 6 and 7, respectively. Those accounts were all subject to the original TOS, which had the unconscionable arbitration provisions. *Id.* Valerie Spencer and Donald Spencer never agreed to abide by any of the modified versions of the TOS on those accounts. *See* Exhibits 6 and 7. Carl Evans never agreed to abide by the modified 3/2010 TOS. *See* Exhibit 5. Further, Defendants never returned the virtual property, virtual items and United States currency they confiscated from Plaintiffs. *Id.*

<div style="margin-left: 45%;">

Respectfully submitted,

</div>

Date: October 11, 2010              PRIBANIC, PRIBANIC + ARCHINACO LLC

<div style="margin-left: 45%;">

By <u>JAA7341</u>
   Jason A. Archinaco.
   PA ID 76691
   513 Court Place
   Pittsburgh, PA 15219
   (412) 281-8844
   *Counsel for Plaintiffs*

</div>